UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-CV-81256-ROSENBERG/BRANNON

PATRICK O'BRIEN,

    Plaintiff,

v.

JIM'S ANTIQUES LTD. OF NJ INC.,
a Florida corporation, and
JAMES ALTERMAN, individually,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO VACATE AND/OR SET ASIDE DEFAULT JUDGMENT

**THIS MATTER** is before the Court on Defendants Jim's Antiques of N.J., Inc.'s and James Alterman's Motion to Vacate and/or Set Aside Default Judgment and Stay Execution of Judgment Pending Disposition of This Motion and Incorporated Memorandum of Law [DE 41] (the "Motion to Vacate"). The Court has carefully considered Defendants' Motion, Plaintiff's Response thereto [DE 44], and Defendants' Reply [DE 48]. In addition, the Court held a hearing on September 20, 2016, and is otherwise fully advised in the premises. For the reasons set forth below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

    **I.**    **BACKGROUND**

This is an action for unpaid wages under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* Plaintiff Patrick O'Brien filed his Complaint [DE 1] against Defendants Jim's Antiques LTD. of N.J., Inc. ("Jim's Antiques") and James Alterman ("Alterman") on September 3, 2015. On December 26, 2015, Plaintiff filed an Affidavit of Service [DE 15]

stating that Jim's Antiques had been served on October 21, 2015, and a separate Affidavit of Service [DE 16] stating that Alterman had been served on October 30, 2015.

In the absence of any response filed by Jim's Antiques or Alterman, Plaintiff filed a Motion for Clerk's Entry of Default [DE 17] against both Defendants on January 10, 2016. Following entry of a Clerk's Default [DE 19] on January 12, 2016, Plaintiff filed a Motion for Default Final Judgment [DE 21]. The Court denied Plaintiff's Motion for Default Final Judgment without prejudice on February 12, 2016, *see* DE 22, and Plaintiff filed a Second Motion for Default Final Judgment [DE 23] on February 15, 2016.

The Court held an evidentiary hearing on March 24, 2016, *see* DE 31, following which it entered an Order Granting Plaintiff's Second Motion for Default Final Judgment [DE 32] and Final Judgment [DE 33] against Defendants in the amount of $23,998.14. The Court subsequently granted Plaintiff's Verified Motion for Award of Attorneys' Fees and Reasonable Expenses of Litigation [DE 34] on May 18, 2016, awarding $8,850.00 in attorneys' fees and $830.00 in costs. *See* DE 35. On May 20, 2016, the Court issued a Writ of Execution [DE 37] for the amount of $33,678.14. On August 26, 2016, Plaintiff filed a Motion to Compel Post-Judgment Discovery Requests [DE 40]. On August 29, 2016, Jim's Antiques and Alterman filed the Motion to Vacate presently before the Court.

In their Motion to Vacate, Jim's Antiques and Alterman argue that neither was properly served and that the Final Judgment entered against them is therefore void. Specifically, Alterman disputes that he was personally served and asserts that the physical description contained in the Affidavit of Service does not match his own. Jim's Antiques acknowledges that its employee Kaitlin Beck was served but asserts that she was not authorized to accept service on behalf of the entity. Having considered all of the evidence presented in the parties' respective filings and

during the hearing held September 20, 2016, the Court finds that Alterman was personally served but that service was not properly made on Jim's Antiques. The Final Judgment is therefore set aside as to Jim's Antiques only.

## II.   DISCUSSION

Arguing that neither Jim's Antiques nor Alterman was properly served, Defendants seek to set aside the Final Judgment pursuant to Federal Rule of Civil Procedure 60(b)(4) and (6), which permit the Court to set aside a final judgment where the judgment is void or for any other reason that justifies relief. A defendant seeking relief from default judgment on the ground that such judgment is void due to insufficient service of process bears the burden of proving that process was in fact insufficient. *See Baker v. Joseph*, 938 F. Supp. 2d 1265, 1267 (S.D. Fla. 2013) (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003)).

### A.  Alterman

The evidence submitted by Plaintiff establishes the following facts. Florida process server Barry Wolf attempted to serve Alterman six separate times at Alterman's Florida residence—130 Churchill Way, Manalapan, Florida—before assigning the job to a process server in New Jersey. *See* DE 49 ¶¶ 1–4, 7. New Jersey process server Michael Farrell then attempted to serve Alterman at Alterman's New Jersey gallery—6 Bridge Street, Lambertville, New Jersey—on October 21, 2015, October 25, 2015, and October 28, 2015. *See* DE 44-2 ¶¶ 4, 11–13. On October 28, 2015, Farrell left his contact information for Alterman, who called Farrell on October 30, 2015 and advised that he would be available to receive service at the gallery that evening at 6:30 p.m. *See* DE 44-2 ¶¶ 13–14. Farrell agreed to meet Alterman at that time. *See* DE 44-2 ¶ 14. When Farrell arrived at 6:15 p.m. on October 30, 2015, the front door of the gallery

3

was locked, so Farrell walked around to the back. *See* DE 44-2 ¶ 15. There, Alterman identified himself and Farrell served him. *See* DE 44-2 ¶ 15; *see also* DE 16.

Testifying telephonically during the hearing held September 20, 2016, Farrell reiterated the facts set forth above and added that his interaction with Alterman was very brief. At the back of the gallery, Farrell climbed four large steps and banged on the door, then walked back down the steps. A man opened the door, leaned out, and said he would not sign for anything. Farrell handed Alterman the summons and Complaint, which Alterman accepted, then Alterman closed the door.

In his Affidavit of Service, Farrell described Alterman as a 48-year-old white male, bald, with no glasses, standing 6'1" tall and weighing 200 pounds. *See* DE 16. However, as Farrell explained during the hearing, it was difficult to estimate Alterman's age, height, and weight from where Farrell stood at the bottom of four large steps below Alterman. Such characteristics as baldness, skin color, and absence of glasses were easier to determine and subject to less variation. *See* DE 44-2 ¶ 16.

Alterman denies that he was ever personally served. In support of the Motion to Vacate, Alterman submitted an Affidavit stating that he is 5'7" tall and weighs 150 pounds—both shorter and lighter than the man described by Farrell in his Affidavit of Service. *See* DE 41-3 ¶ 7. Alterman also stated that he could not have been served at 6:15 p.m. on October 30, 2015, because on that date the gallery closed and the doors were locked at 5:00 p.m. *See id.* ¶ 9. Alterman reiterated these statements through live testimony during the hearing, and added that there are no steps at the back of the gallery as Farrell described. Following the hearing, Alterman submitted photographs of all entrances to the New Jersey gallery. *See* DE 51.

The Court concludes that Farrell personally served Alterman in his individual capacity on October 30, 2015. To begin with, the Court finds Farrell's testimony more credible than Alterman's. Farrell—who, unlike Alterman, has no interest in the outcome of this case—specifically described his attempts to serve Alterman, his conversation with Alterman in which the two men arranged to meet, and the circumstances under which he finally served Alterman. Although Farrell's estimation of Alterman's height and weight varied from Alterman's actual height and weight, such variation is easily explained by the fact that Farrell observed Alterman only briefly as Alterman leaned out the door at some height above Farrell. Farrell accurately described Alterman's baldness, skin color, and absence of glasses, the observation of which would not have been affected by Farrell's vantage point. Finally, the photographs submitted by Alterman reveal that there are indeed steps leading up to at least two of the entrances to the gallery.[1] *See* DE 51-1 at 1–2. The photographs also reveal that the building is freestanding, as a result of which the Court concludes that Farrell did not inadvertently serve an individual at another store. *See* DE 51-1 at 1–4. Accordingly, the Court concludes that Farrell personally served Alterman as Farrell described.

### B.  Jim's Antiques

Despite Alterman's position as president and registered agent of Jim's Antiques, *see* DE 41-3 ¶¶ 2, 4, personal service made on Alterman in his individual capacity does not constitute service on Jim's Antiques. *See Winmark Corp. v. Brenoby Sports, Inc.*, No. 13-CIV-62697-SCOLA/VALLE, 2014 WL 11706427, at *2–3 (S.D. Fla. May 30, 2014); *Goodman v. Goodman*, No. 04-03869 (JAG), 2009 WL 3756848, at *5 (D.N.J. Nov. 5, 2009). The Court must therefore determine whether service on Kaitlin Beck, an employee at Jim's Antiques,

---

[1] With respect to the other two entrances, the photographs are of insufficient quality to determine whether there are steps or not. *See* DE 51-1 at 3–4.

constitutes proper service on Jim's Antiques. For the reasons set forth below, the Court concludes that it does not.

Pursuant to Federal Rule of Civil Procedure 4(h), a corporation may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Accordingly, validity of service on Defendant Jim's Antiques may be determined under either the laws of Florida (where the Court is located) or New Jersey (where service was made). In the alternative, a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." *See* Fed. R. Civ. P. 4(h)(1)(B).

In Florida, service on a corporation is governed by Florida Statutes section 48.081, which provides in relevant part as follows:

> (1) Process against any private corporation, domestic or foreign, may be served:
> (a) On the president or vice president, or other head of the corporation;
> (b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;
> (c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
> (d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer or business agent residing in the state.
>
> (2) If a foreign corporation has none of the foregoing officers or agents in this state, service may be made on any agent transacting business for it in this state.
>
> (3)(a) As an alternative to all of the foregoing, process may be served on the agent designated by the corporation under s. 48.091. However, if service cannot be made on a registered agent because of failure to comply with s. 48.091, service of process shall be permitted on any employee at the corporation's principal place of business or on any employee of the registered agent. A person attempting to serve

> process pursuant to this paragraph may serve the process on any employee of the registered agent during the first attempt at service even if the registered agent is temporarily absent from his or her office.

Florida Statutes section 48.091, in turn, requires every corporation to designate a registered agent and registered office, keep the registered office open from 10 a.m. to 12 noon each day except Saturdays, Sundays, and legal holidays, and keep one or more registered agents on whom process may be served at the office during these hours.

> In New Jersey, service on a corporation must be made:
>
> on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in th[e] State in charge thereof, or if there is no place of business in th[e] State, then on any employee of the corporation within th[e] State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

N.J. Ct. R. R. 4:4-4(a)(6).

The testimony presented by Alterman and Beck during the hearing establishes the following facts. Beck is employed by Jim's Antiques as a bookkeeper in the New Jersey gallery. Beck performs such administrative duties as answering phone calls, filing paperwork, and responding to emails. She has no managerial authority or discretion over the operation of the business, cannot sign checks, cannot make payments without Alterman's approval, cannot enter into any contracts or transactions, and cannot sell any items. She is not an officer or director, trustee, managing or general agent, or registered agent of Jim's Antiques. Plaintiff's only evidence to the contrary is Farrell's testimony that Beck identified herself as the "assistant manager" of Jim's Antiques at the time of service.

This testimony establishes that Beck is not "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" on behalf of Jim's Antiques within the meaning of Federal Rule of Civil Procedure 4(h)(1)(B). Similarly, this testimony establishes that Beck is not a president, vice president, or other head, cashier, treasurer, secretary, general manager, director, officer, business agent, or registered agent of Jim's Antiques within the meaning of Florida Statutes section 48.081(1). Finally, this testimony establishes that Beck is not an officer, director, trustee or managing or general agent of Jim's Antiques, is not authorized by appointment or by law to receive service of process on behalf of Jim's Antiques, is not in charge of the registered office of Jim's Antiques, and is not in charge of the principal place of business of Jim's Antiques within the meaning of New Jersey Rule 4:4-4(a)(6).

Accordingly, service on Beck could only have been valid, if at all, under Florida Statutes section 48.081(3). That section permits service "on any employee at the corporation's principal place of business or on any employee of the registered agent" if service cannot be made on a registered agent because of failure to comply with section 48.091. The evidence submitted by Plaintiff establishes that multiple attempts to serve the registered agent at the registered office were made, but there is no evidence of the dates and times on which service was attempted. Accordingly, Plaintiff has not established that he could not serve the registered agent of Jim's Antiques because of failure to comply with section 48.091. Service on Beck therefore does not constitute proper service on Jim's Antiques.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Jim's Antiques of N.J., Inc's and James Alterman's Motion to Vacate

    and/or Set Aside Default Judgment and Stay Execution of Judgment Pending Disposition of This Motion and Incorporated Memorandum of Law [DE 41] is **GRANTED IN PART and DENIED IN PART**.

2. The Final Judgment [DE 33] entered by the Court is **SET ASIDE** as to Defendant Jim's Antiques LTD. of N.J., Inc. only.

3. No later than **Monday, November 7, 2016**, Plaintiff shall file either (1) a motion to reopen this case in order to pursue his claims against Defendant Jim's Antiques LTD. of N.J., Inc., or (2) any appropriate papers related to the dismissal of his claims against Defendant Jim's Antiques LTD. of N.J., Inc.

4. If Plaintiff does not intend to pursue his claims against Defendant Jim's Antiques LTD. of N.J., Inc., Plaintiff may file a renewed Motion to Compel Post-Judgment Discovery Requests directed to Defendant James Alterman only, if necessary. *See* DE 40, DE 42.

    **DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 31st day of October, 2016.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE